MYRA HARRIS ET AL. v. BENJAMIN CREVELING AND SARAH HERRICK.

*Mortgage—Foreclosure by advertisement—Sale—Verbal agreement for reduction of rate of interest.*

1. "Occupancy," within the meaning of How. Stat. § 8503, authorizing the sale together, on a mortgage foreclosure by advertisement, of separate lots occupied as one parcel, does not require that *all* of the land be fenced or improved. The actual inclosure of part carries with it the occupancy of the remainder, which is used, or intended to be used, as part of one farm.

2. A complainant, who claims that a mortgage sale by advertisement is void because separate lots were sold in one parcel, has the burden of proof to show that they were *not* occupied as one parcel; and it is not sufficient to show that part of one lot was fenced and cultivated, and that the adjoining lot was unfenced.

3. A verbal agreement for the reduction of the rate of interest stipulated for in a written instrument is invalid. *Tousey v. Moore,* 79 Mich. 564.

Appeal from Ottawa. (Arnold, J.) Argued April 9 and 10, 1890. Decided April 18, 1890.

Bill to set aside certain foreclosure proceedings by advertisement, and for other relief. Complainants' appeal from decree dismissing bill. Decree affirmed. The facts are stated in the opinion.

*Frank L. Carpenter,* for complainants, contended:

1. The trust imposed by the assignment to Israel V. Harris, for the benefit of the creditors of Myron Harris, having been fully discharged, the omission of the lots in suit from the reconveyance to Myron Harris is unimportant, the legal estate vesting in him without such a reconveyance; citing How. Stat. § 5585; *Steevens v. Earles,* 25 Mich. 40; *Detroit v. Railroad Co.,* 23 Id. 215; *Toms v. Williams,* 41 Id. 552, 566.

2. In support of the claim that the foreclosure by Creveling was

void, because the mortgaged lots were not sold separately,. counsel cited How. Stat. §§ 8503, 8507; *Lee v. Mason*, 10 Mich. 403; *Udell v. Kahn*, 31 Id. 195; *Grover v. Fox*, 36 Id. 461; *Clark v. Stilson*, Id. 482; *Durm v. Fish*, 46 Id. 312; *Snyder v. Hemmingway*, 47 Id. 549; *Baldwin v. Cullen*, 51 Id. 33.

3. As to the effect of an administrator's trafficking in the funds and property of the estate for his own benefit, counsel cited How. Stat. § 6042; *Hoffman v. Harrington*, 28 Mich. 90; *Sheldon v. Rice Estate*, 30 Id. 296; *Pierce v. Holzer*, 65 Id. 263; *McKay v. Williams*, 67 Id. 547.

*More & Wilson*, for the defendants, contended for the doctrine stated in the opinion.

GRANT, J. Israel V. Harris, Myron Harris, and Miriam, the wife of Myron, executed a mortgage, October 8, 1874, to defendant Creveling, on two pieces of land, known as "Lots One and Two of Section 34," to secure the payment of a note for $1,000 made by Israel V. and Myron Harris. The lots were contiguous, and bordered upon Grand river upon the south. There was a road upon the west side of lot 2, and one upon the north side of both lots. One lot contained 45 acres; the other, 58. Part of lot 1 had been cleared, fenced, and was used for farming. The remainder of the lots was open common, from which the timber had been, mainly, cut.

January 27, 1862, Myron Harris made an assignment of all of his property, real and personal, to Israel, for the benefit of his creditors. Myron deeded the land in dispute to his wife, May 1, 1880. August 3, 1874, Israel reconveyed certain other lands to Myron, and the deed contained the following recital:

"The object of this quitclaim and release being to reinvest said Myron Harris with the title to said lands,— he having, by deed of trust, recorded in Liber S. of Deeds, at page 263, conveyed said lands to the first party heretofore, for the benefit of creditors; the trust hereby imposed having been fully discharged."

This deed was duly recorded. It did not include lots

1 and 2. Myron Harris died September 1, 1880, testate, and Israel was the executor. Miriam Harris died intestate September 14, 1880, and Israel was appointed administrator. These lots were inventoried by Israel among the assets of Miriam's estate. Israel died October 17, 1886, without filing any account as · administrator or executor.

July 5, 1881, defendant Creveling commenced to foreclose by advertisement. The sale took place November 1, 1881. The lands were sold in one parcel, and were bid in by Creveling for $1,245; that being the amount claimed to be due. The value of the premises was about $1,500. The deed was filed, and became operative November 1, 1882. November 30, 1883, Creveling made a written contract with Israel to sell him the land for $1,125.55; Israel at the same time paying him the difference between that sum and the actual cost of the lots to Creveling, including interest, taxes, etc. October 15, 1886, Israel assigned said contract to defendant Herrick, in consideration of services rendered him as nurse, and expenditures made for his benefit.

Complainants, by their next friend, Mr. Carpenter, filed this bill August 1, 1887, claiming that the sale was void because the premises were sold in one parcel; that Creveling and Israel fraudulently combined to secure a foreclosure, and vest the title in Israel; that the sale was for a larger amount than was due; that Israel used the money of the estate of Myron to make the payments upon the contract; that defendant Herrick fraudulently procured an assignment of the land contract from Israel; and that she holds it in trust for complainants. Answers were filed denying all the material allegations in the bill, except that the lots were sold as one parcel. Proofs were then taken in open court, and decree rendered dismissing the bill; and complainants appeal.

1. There is no evidence of fraud or collusion between

Creveling and Israel Harris in connection with the fore-closure proceedings. The mortgage and note were long past due when Creveling commenced to foreclose. No conversation occurred between them in regard to the matter until two years after the sale, when Creveling contracted to sell to Israel. If the payment by Israel was made out of the estate of Myron or Miriam, this would not affect Creveling's title, and this is the only circumstance in the record upon which to base a charge of fraud against him.

2. The claim that the sale was for more than was due is not sustained by the evidence. This depends upon the fact as to whether or not there was a valid agreement to reduce the rate of interest from 10 to 7 per cent. Two witnesses testified on this point. Mr. Carpenter—the guardian, next friend, and solicitor for complainants—testified that he made such an arrangement with Creveling. Creveling denies it. The learned circuit judge saw the witnesses upon the stand, and was in a much better position to determine where the truth lay, or whether complainants had a preponderance of the evidence, than are we. We will not, therefore, question the correctness of his finding in this respect. But the fatal objections to this claim are:

1. It was a mere naked promise on the part of Creveling, without any consideration.
2. It rests entirely in parol. *Tousey v. Moore,* 79 Mich. 564.

3. The evidence fails to show that the sale was void because the lots were sold as one parcel. The burden of proof was on the complainants. They did not establish the fact that the lots were *not* occupied, and intended to be used, as one farm. The statute (How. Stat. § 8503) governing the sale of mortgaged premises has been frequently interpreted by this Court, and it is unnecessary

to discuss it here. " Occupancy," within the meaning of the statute, does not require that all the land be fenced or improved. The actual inclosure of part carries with it the occupancy of the balance, which is used, or intended to be used, as part of one farm. There was nothing to show that lot 2 had not been used to supply wood and timber for use upon the farm for fuel, fences, and buildings, or that the buildings erected on lot 1 were not of sufficient size for a farm comprising both lots. The lots were so situated as naturally to constitute one farm. It is not sufficient, to invalidate a foreclosure sale, to show that part of one lot was fenced and cultivated, and that the adjoining lot was unfenced.

4. There was no evidence that defendant Herrick obtained the contract from Israel Harris by undue influence or fraud. On the contrary, she paid a valid and valuable consideration therefor. She had no knowledge that Isreal had made any payments to Creveling upon the contract out of the funds of the estates of either Myron or Miriam. The title of both Israel and of complainants had been cut off by the foreclosure sale and deed. As affecting the title of the defendant Herrick, the records of the deed from Israel to Myron, and of Myron to Miriam, were wholly immaterial. They do not in any manner affect the validity of her title. She was a purchaser in good faith.

The decree of the circuit court must be affirmed, with costs.

MORSE, LONG, and CAHILL, JJ., concurred. CHAMPLIN, C. J., did not sit.