LAWRENCE *v.* FIRST NATIONAL BANK & TRUST
COMPANY OF KALAMAZOO.

1. TRUSTS—CARE REQUIRED FOR INVESTMENT TRUST.

Trustee with whom funds are left for investment must use such care as prudent persons of intelligence and integrity would use in investigating nature of proposed investment so that funds may earn an income during term of trust and at expiration be turned over without loss.

2. SAME.

Circumstances of particular case govern determination as to whether trustee is guilty of negligence or violates its trust duty.

3. SAME—POWER OF REVOCATION.

Reservation of power to revoke trust agreement gives settlor, who is made *cestui que trust* for her lifetime, practically full control over trust transactions and makes legal aspect of relationship akin to that of principal and agent.

4. SAME—AUTHORITY TO MAKE CERTAIN INVESTMENTS—PROTECTION OF TRUSTEE.

Trustee, who has authority of settlor, expressed in trust instrument, to invest trust funds in certain manner, and again secured written approval before each such investment was made, cannot be compelled to return to settlor trust funds so invested.

5. SAME—INTERVENTION OF TRUSTEE.

Trustee under revocable investment trust is not required to intervene and prevent investments authorized by trust agreement and consented to by settlor before consummation of each such investment.

6. SAME—KNOWLEDGE OF SETTLOR AS TO INVESTMENTS AUTHORIZED.

Record *held*, to show that settlor of revocable trust, who authorized and consented to investment of funds in vendor's interest in her nephew's land contracts accompanied by his guaranty of performance but subject to mortgages, knew the nature of such investment and extent of mortgages.

7. SAME—INTEREST OF TRUSTEE IN TRUST FUND INVESTMENTS.

Investment in land contracts subject to mortgages as a result of which trustee received payments on indebtedness to it and of which settlor was not advised *held*, not to have influenced trustee in making such investment of funds of revocable trust.

8. SAME—IMPROPER INVESTMENT OF TRUST FUNDS—CONSENT OF SUI JURIS CESTUI.

Trustee cannot be held to make good a loss of trust funds where it makes an improper investment of them with the knowledge, assent, and acquiescence or at the request of a *cestui que trust* who is *sui juris*.

Appeal from Kalamazoo; Brown (William B.), J., presiding. Submitted January 18, 1934. (Docket No. 83, Calendar No. 37,567.) Decided March 6, 1934.

Bill by Matilda B. Lawrence against First National Bank & Trust Company of Kalamazoo for an accounting and other relief as to trust funds. Decree for defendant. Plaintiff appeals. Affirmed.

*Henry M. Kimball,* for plaintiff.

*Mason & Sharpe,* for defendant.

NORTH, J. A trust agreement dated September 15, 1927, was entered into between plaintiff and defendant. Plaintiff was the settlor and by her agreement with defendant established a living trust by the terms of which the net income of the trust estate was to be paid to plaintiff and further, the trustee was authorized to use from the *corpus* of the trust if reasonably necessary to provide a suitable living for plaintiff and her adopted daughter. By its express terms, plaintiff had power to revoke the trust at any time during her lifetime. If not revoked, the agreement contained suitable provisions for dis-

position of the body of the trust at plaintiff's death. Aside from other property not here involved, defendant received from plaintiff approximately $14,000 in cash as part of the trust estate. In this suit, started May 4, 1933, plaintiff claims that defendant carelessly and negligently invested the trust funds by purchasing the vendor's interest in certain land contracts covering properties which were incumbered by underlying mortgages and that in so doing defendant acted in violation of its duty to invest the trust funds safely, and that instead of using sound judgment in making such investments the trustee acted carelessly and negligently and that a loss of the trust funds above mentioned resulted from such misconduct on the part of the trustee. The relief sought is that defendant be required to return to the trust the money invested in the land contracts, that there be a termination of the trust relation, and an accounting. In brief the defense urged by the trustee is that the investments of which plaintiff now complains were made under her direction or at least with her consent and approval; and that defendant "was not left free to exercise its judgment, integrity or good faith, but was definitely directed with regard thereto by said plaintiff." Upon hearing in open court the circuit judge found that plaintiff was not entitled to the relief sought, and a decree was entered dismissing her bill of complaint. Plaintiff has appealed.

Decision in the instant case turns upon the question as to whether the trustee is to be held accountable under the rules of law by which a trust estate is ordinarily protected. This court has held:

"When such a fund passes into the hands of a trustee, it comes impressed with a double duty, *first,* to so invest it that it can be turned over at the

expiration of the trust period without loss, and, *second,* to secure an income therefrom. He must act honestly and faithfully and in what he believes to be the best interest of the *cestui que trust.* He must exercise a sound discretion. He is bound to proceed with diligence in investigating the nature of the proposed investment and to use such care in deciding as, in general, prudent men of intelligence and integrity in such matters employ in their own affairs when making a permanent investment." *In re Buhl's Estate,* 211 Mich. 124, 131 (12 A. L. R. 569).

If defendant's liability were to be tested by the above rule, it would be required, under the record of this case, to account to plaintiff for the investments made in the land contracts because the trustee admits that it made no investigation from which it could determine the desirability or security of such investments. But, as noted above, the defense here urged is that plaintiff instead of leaving it to the trustee to exercise its discretion in making the investments of which she now complains, arranged for and directed or at least gave her approval in writing to each of such investments. To correctly understand this aspect of the record, a more complete statement of the facts is essential.

Plaintiff's husband died in 1926. They then resided in the State of Texas and owned property there of substantial value. They had formerly resided in Michigan. Harold B. Lawrence of Kalamazoo, Michigan, was a nephew of plaintiff's husband. Shortly after the latter's death this nephew went to Texas for the purpose of assisting plaintiff in looking after her property affairs. Both plaintiff and her husband seemed to have had full confidence in the integrity of Harold B. Lawrence, respected his business judgment, and were desirous of aiding

him when in need of financial assistance. At one time his unsecured indebtedness to plaintiff was in excess of $10,000. He was instrumental in inducing plaintiff to establish a trust relation with defendant of the character first above noted. He had been engaged as a real estate operator and builder of houses which he mortgaged and thereafter sold on contracts. The record clearly indicates that prior to the consummation of the trust agreement plaintiff contemplated that the trust funds might be invested by purchasing the vendor's interest in these land contracts held by Harold B. Lawrence. About a month prior to the execution of the trust agreement a letter from the trustee's attorney to plaintiff contained the following:

"Do you desire that the trustee shall invest the funds in land contracts made by Harold B. Lawrence, bonds, mortgages or other securities? Mr. Lawrence has spoken to us that there has been some understanding that this fund is to be utilized to take up some land contracts which he presently holds as vendor."

Plaintiff's immediate reply to the above was as follows:

"If the trust officer thinks the land contracts a safe investment I desire that the money be invested that way. The other money that I send I would like invested with as high rate of interest as is considered safe. Talk it over with Harold B. Lawrence, and as you both decide I will be satisfied."

In the letter with which plaintiff returned the executed trust agreement to the trustee's attorney she stated:

"The contracts, as you know, Harold B. Lawrence has are to be added to this trust fund."

Concerning this last letter plaintiff testified:

"*Q.* Prior to the time when you wrote that letter you had some understanding with Harold B. Lawrence to the effect that this trust was going to buy some of these contracts, did you not?

"*A.* It must be that I did from this letter."

The trust agreement contains the following:

"It is expressly understood and agreed that the said trustee may purchase of Harold B. Lawrence of Kalamazoo, Michigan, any land contract interest which the said Harold B. Lawrence may have as vendor as an investment in said trust estate providing the said Harold B. Lawrence shall first guarantee the faithful payment and performance of said contracts by the vendees thereof, and to hold said trustee and said trust estate harmless from any loss thereon."

Not only is this specific provision made in a trust agreement authorizing investments by the trustee in the Harold B. Lawrence contracts, but in each of the eight instances in which the trustee did purchase such contract interest plaintiff's approval in writing was given to the trustee before the transaction was fully consummated. Performance of each contract was guaranteed by Harold B. Lawrence as provided in the trust agreement. The first of such investments by the trustee was made in June, 1928, and the last in December, 1930. Unlike the other contract interests purchased, this last contract was not subject to an underlying mortgage. It covered a cottage and a boat, the cottage being built on leased ground. Each of such investments, owing to subsequent adverse economic conditions, proved to be unfortunate. The vendees under the contracts defaulted in payments and the contracts were forfeited. The testimony discloses that in each case

the mortgage incumbrance equalled or practically equalled the value of the property after the decrease in real estate values incident to the general economic depression. Investments in Lawrence contracts totaled approximately $13,000. While plaintiff knew of each investment at the time it was made, she voiced no complaint until reduction in income indicated the undesirability of the investment.

In determining whether the trustee was guilty of negligence or violation of its trust duty, we must be governed by the circumstances of the particular case. In that connection it is to be noted that while plaintiff evidently was inexperienced in the particular type of transactions here involved, her business letters disclose a good general conception of business matters and more than average intelligence. By reserving the power to revoke the trust agreement she retained practically a full control over trust transactions. In this connection it must be born in mind that plaintiff was not only the settlor in this trust but she was during her lifetime the *cestui que trust*. Obviously the legal aspect of the instant trust is very different than in a vested trust in which the settlor has provided for a third person or persons as beneficiaries thereof. The legal aspect of this case presents a relationship much more nearly akin to that of principal and agent. The further fact appears in this record that plaintiff was desirous of assisting her nephew. She did the unusual thing of making specific provision in the trust agreement that the trust funds might be invested in contracts held by him "providing the said Harold B. Lawrence shall first guarantee faithful payment and performance." It may be questioned if this provision alone was not sufficient to justify the investments of which plaintiff herein complains. But the trustee took the additional precaution before consummating any such

purchase with trust funds to again take the matter up with plaintiff and secure in writing the evidence of her consent or approval to each transaction of this character.

But plaintiff further urges that defendant failed to perform its full duty as trustee in that it did not advise her either as to the desirability or the undesirability of investments in these land contracts which were taken subject to the underlying mortgages. Plaintiff makes no claim that at the time she gave consent to the respective investments she sought defendant's advice or guidance in this particular; but rather takes the position that the defendant should have intervened and prevented her from consenting to the investment of the trust funds in this manner or at least should have advised or warned her against so doing. In this connection plaintiff details and stresses the representations made to her in the letters and literature of defendant at the time the trust was created relative to its ability and facilities for handling trust funds and the care it exercised in so doing. Notwithstanding this, under the circumstances of this case, we think it would be going too far to hold in a trust of this character that the trustee was bound to intervene and prevent the consummation of the investments in the Harold B. Lawrence contracts for which specific authority was embodied in the trust agreement and to which plaintiff subsequently gave her express consent. Notwithstanding plaintiff's attempt to minimize her knowledge of the nature of these investments, the record, as we view it, is against her. She wanted a high rate of interest. Before the trust agreement was consummated plaintiff's nephew, Harold B. Lawrence, wrote her:

"The financing of that (building operations in Texas), was what I hoped to accomplish by turning

your money into my land contracts thereby giving me cash instead of Kalamazoo paper, which is useless so far from home. I suppose this could still be done, if the trustee was instructed to accept land contracts, guaranteed by me. * * * They also bear seven per cent. which is higher than the bonds, etc., that the trust committee will buy, and pay interest monthly.''

As before noted, the first investment from this trust in the Lawrence contracts was made in June, 1928, approximately nine months after the trust was created. Harold B. Lawrence testified in substance that prior to this investment he had talked to plaintiff about purchasing this contract, that he volunteered to guarantee its payment; that he would discount this seven per cent. contract about $200; that he explained the underlying mortgage to her ''quite thoroughly and showed what my equity was,—that is what she was buying;'' that interest on the mortgage would be payable twice a year; that he figured out her net income; and that plaintiff ''approved of the plan of purchasing this contract prior to the occasion when it was signed up.'' The statement of the trust account forwarded to plaintiff by defendant for the period ending April 2, 1929 (the first account after the investment in this contract), clearly discloses that defendant trustee had charged plaintiff with $87.50 used to make a semi-annual interest payment on the underlying mortgage. Like entries as to this and other underlying mortgages plainly appeared on subsequent accounts made to plaintiff by the trustee from time to time. From the above and other circumstances disclosed by this record we are convinced that plaintiff was well aware of the nature and extent of these underlying mortgages.

There is no claim that defendant herein profited financially as a result of any of the transactions con-

cerning which, complaint is made. However, plaintiff does point out that the testimony does not disclose that she was aware at the time the trust funds were invested in the Harold B. Lawrence contracts he was indebted to the defendant bank and that a portion of the money he was receiving from the sale of the contracts was to be used to pay such indebtedness. Plaintiff intimates that she should have been advised by the defendant of such indebtedness and of such payment. The record fully satisfies us that in making investments in these land contracts the trustee was in no way influenced by the circumstances above noted.

Many other circumstances to which we have not alluded are disclosed by the record, some of which appellant claims tend to sustain her charge that defendant did not faithfully perform its duty as trustee in the execution of this trust, and some of which appellee asserts tend to sustain its contention to the contrary. Full and careful consideration of this record brings us to the conclusion that the circuit judge who heard the case reached the right result. In part he summarized as follows:

"As a matter of fact, the matter of the purchase of the land contracts for the trust fund was taken completely out of the hands of the trustee by the plaintiff who was acting entirely upon her own judgment and as influenced by said nephew, Harold Lawrence, for the purpose of getting a higher rate of interest and getting the benefit of discount upon contracts when offered."

We think the instant case is controlled by legal principles embodied in the following:

"If trustees make an improper investment with the knowledge, assent, and acquiescence, or at the request of the *cestui que trust,* they cannot be held

to make good the loss, if one happens; but the *cestui que trust,* to be affected by such consent or acquiescence, must be *sui juris,* and capable of acting for themselves." 1 Perry on Trusts (7th Ed.), § 467.

"Where beneficiaries either expressly or impliedly assent to the action of their trustee in managing their property not in strict accord with the terms of the trust, they will be held to have acquiesced in such action. * * * A party cannot complain when he has consented." *Quimby* v. *Uhl,* 130 Mich. 198, 212.

The decree dismissing plaintiff's bill of complaint is affirmed, with costs to appellee.

POTTER, FEAD, WIEST, BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred. NELSON SHARPE, C. J., did not sit.