NEW ENGLAND MUTUAL LIFE INS. CO. *v.* LINDENBAUM.

LINDENBAUM *v.* NEW ENGLAND MUTUAL LIFE INS. CO.

1. MORTGAGES—FORECLOSURE.

Evidence *held*, insufficient to establish a definite agreement to withhold foreclosure of a mortgage until its maturity.

2. SAME—OCCUPANCY OF PLATTED LOTS AS ONE PARCEL—BURDEN OF PROOF.

Mortgagor, claiming foreclosure sale was invalid because premises were sold as one parcel, has burden of proof that at time of sale the premises consisted of distinct lots not occupied as one parcel, such occupancy being a practical question resting upon the circumstances.

3. SAME—FORECLOSURE—SALE AS ONE PARCEL.

Foreclosure sale of mortgaged property as one parcel *held*, valid, where, although portions of store and apartment building were built at different times, the addition was separated merely by a fire wall, not a party wall, front and rear of buildings show no line of separation, access to rear of older portion is gained through passage over newer part and there are other indications that building was considered as but one structure although occupying several platted lots.

Appeal from Wayne; Toms (Robert M.), J. Submitted April 15, 1936. (Docket Nos. 96, 97, Calendar Nos. 38,819, 38,820.)   Decided June 11, 1936. Rehearing denied September 2, 1936.

Summary proceedings by New England Mutual Life Insurance Company, a Massachusetts corporation, against Harry Lindenbaum to secure possession of land. Bill by defendant against plaintiff to enjoin summary proceeding. Cases consolidated for trial. Directed verdict and judgment for plain-

tiff in summary proceedings. Defendant's bill in equity dismissed. Both affirmed.

*Lloyd Axford, William E. Tarsney,* and *Arthur Axford (Ray Cashen,* of counsel), for plaintiff.

*Edward B. Benscoe (Albert McClatchey,* of counsel), for defendant.

BUSHNELL, J. The first case is a summary proceeding at law for the possession of real estate after foreclosure of a mortgage thereon by advertisement, and the second is a chancery action to restrain plaintiff in the first cause from taking possession after the claimed invalid foreclosure. As both cases involved the same property they were ordered consolidated for trial.

Appellant's statement of questions involved presents two claims: first, that the property consists of two parcels and therefore must be sold separately; second, that the mortgagee breached an agreement to withhold foreclosure until the maturity of the mortgage.

The opinion of the trial court is silent as to appellant's second claim although some testimony was received on this phase of the chancery case.

The record contains a letter from the mortgagor to the mortgagee's agent in which he stated his inability to pay the taxes, etc., and argued that it was better to allow him to continue the management of the property under the terms therein detailed. We quote from this letter:

"This offer is made with the understanding that the 1929 past-due taxes shall be paid by you at once, so that they will not be sold to a tax buyer; also with the understanding that if I turn over all income to you, that the insurance company will

agree not to foreclose on me. and that whenever all taxes, interest and principal payments have been paid up to date, I shall be allowed to retain all moneys then collected. Or if business improves so that I am able to take care of my obligations on the mortgage, it will then not be necessary for me to turn over the rents.''

The mortgagee's agent replied that it had no alternative except to follow instructions; the unpaid taxes were discussed and the reply concludes as follows:

''According to the statements which you have furnished us, there is not sufficient income from the property to take care of the delinquent items, but by taking over the property, we are sure of all the income being applied to the delinquent items, however, this in no way releases you from the obligations under the mortgage and we are expecting payment of the interest due April 1st.

''You must know that the mortgagee would be fully within its rights in starting foreclosure immediately, but they have shown a willingness to help you out, however, if you do not wish to cooperate with them, we are fully convinced that they will instruct us to start foreclosure immediately.

''If you consent to turn over the management of the property to us, we would be glad to have you remain in the property to supervise its operation and assist us in keeping it occupied, but we would insist upon collecting all rents.

''It is important that we have this matter settled before March 15th.''

Appellant contends this amounted to an extension of the mortgage.

It would appear from a colloquy between the court and counsel that this question was not pressed to a final conclusion. The court asked, ''Is there any question of fact raised by the proofs, except as

to the singleness or dualness of the premises?'' and appellant's counsel answered, ''No.'' Later both counsel agreed that under the undisputed facts, this was a question of law for the court. We have, nevertheless, considered all the testimony received on this question and are unable to find that the parties reached a definite agreement to withhold foreclosure until the maturity of the mortgage.

The mortgage covered lots 17, 18, 19 and 20, Garden Annex Subdivision, etc. The property was sold as one parcel and a sheriff's deed was given to the mortgagee as grantee, the consideration recited therein being $91,276.94.

In 1920 Lindenbaum erected a two-story brick building, consisting of five stores and apartments with nine garages in the rear, on all of lots 18, 19 and 20 excepting the southerly five feet of lot 18. A year later he acquired title to lot 17 and erected on it and the south five feet of lot 18 a building to match the older one, consisting of ''two stores in front and two stores in the back and flats above.''

The trial court stated in its opinion:

''There was a fire wall between the old building and the new. The new building was 40 feet wide. Thereafter, the four lots in their entirety, were occupied by the defendant's building, and over the second story windows on the corner, he erected a cement block bearing the words 'Lindenbaum Block.' There is no perceptible separation between the two buildings, the old and the new, and even after an inspection of the building one cannot determine where the old building began and the new left off. The face brick is carried along in continuous courses; the coping and the gutters are continuous; on the whole face of the building, the ornamental cut stone is spaced evenly over the entire front of the building, and no one would suspect that the en-

tire structure was not a single building built in pursuance of a single plan and for the same type of occupancy.   An inspection of the building in the rear shows there too it is impossible to find the line of separation between the buildings.   A row of garages has been built behind the structure and the only way that entrance can be had to the rear of the old building is through an archway, in the rear of lot 17, requiring any person to enter, to cross the rear of lot 17 to gain access to the rear lots 18, 19 and 20.   It is insisted by the defendant that one of the garages is maintained as a passageway and is not used for the ordinary purposes of a garage.   An inspection of the premises and a view of the unbroken row of garages makes this fact of slight importance to the determination of this question.''

The mortgagor testified:

''From the time I built these buildings until August, 1928, I had two separate mortgages, one for $45,000 and the other one for $20,000, on the 40 feet $20,000.

''When I went to Homer Warren to get the new mortgage I went to Mr. Fairchild.   I told him I have two mortgages, two buildings.   Well, he said, 'We will have to make it one.'   I said, 'It don't make any difference to me,' and he made it, the mortgage.   I told him we have to pay two mortgages.   I finally did make this mortgage with him. I had two separate insurance policies.   On the $45,000, we had one policy, on the 20 we had another one.   Different mortgages and different policies.''

The testimony of witness Emery, who is connected with the department of buildings and safety engineering of the city of Detroit, is convincing that the permit for the second building covered an addition to the first, and the wall between the two is a fire wall and not a party wall.

The authorities in this State upon sale of mortgaged premises in separate parcels are annotated in the Compiled Laws (3 Comp. Laws 1929, § 14431) and Mason's 1935 Supplement under the cited statute.

Occupancy of platted lots as one parcel is a practical question resting upon circumstances and plaintiff had the burden of proof that at the time of sale the premises consisted of distinct lots not occupied as one parcel. *Baratto* v. *Pitcher,* 263 Mich. 307.

The situation presented by this record is controlled by *Security Trust Co.* v. *Sloman,* 252 Mich. 266, and *Grand River Avenue Christian Church* v. *Berkshire Life Ins. Co.,* 254 Mich. 480; we repeat what was said there:

"While a mortgagor's right of redemption of part of the premises is to be safeguarded, it is not superior to the right of the mortgagee to collect the debt. We think the premises constituted one known parcel, and the sale as such was proper."

The judgment in the law case and decree in the chancery case are both affirmed, with costs to appellee.

NORTH, C. J., and FEAD, WIEST, BUTZEL, EDWARD M. SHARPE, and TOY, JJ., concurred. POTTER, J., took no part in this decision.