POSTAL v. HOME STATE BANK FOR SAVINGS.

1. MORTGAGES—FORECLOSURE—SALE AS ONE PARCEL.

   Foreclosure sale of mortgaged 240-acre farm property as one parcel *held*, valid, where although land consisted of three different descriptions located in two different sections it was contiguous except as crossed by highways and streams and had been occupied as an entirety by its owners (3 Comp. Laws 1929, § 14431).

2. SAME—FORECLOSURE SALE—INADEQUACY OF PRICE—FRAUD.

   Under proceedings for the foreclosure of a mortgage by advertisement, a sale will not be set aside for mere inadequacy of price; there must be either actual or constructive fraud.

3. SAME—FORECLOSURE SALE—ADEQUACY OF BID.

   Mortgagee's bid of $15,600 at sale under proceedings to foreclose, by advertisement, mortgage on 240-acre farm *held*, fair and adequate where there is no testimony bidding was stifled or that the bid price was a fraud upon the mortgagor, notwithstanding original investment in the property was large, the property had substantially deteriorated in value, the soil was light, buildings had been unoccupied for several years, and assessed valuation at time of sale was $9,800.

4. SAME—MORATORIUM RELIEF—FORECLOSURE.

   Mortgagor's rights in proceedings to foreclose a mortgage by advertisement *held*, confined to an extension of the period of redemption where sale was held before moratorium act became effective (Act No. 98, Pub. Acts 1933).

5. TRUSTS—POWER TO SELL, ASSIGN OR DISPOSE DOES NOT CARRY POWER TO PLEDGE.

   Power, given to trustee to "sell, assign or dispose" of personal property of trust settled with him, *held*, not to carry with it the power to pledge such property as security for mortgage on realty not in the trust.

6. SAME—UNAUTHORIZED USE OF CORPUS—ESTOPPEL—LACHES.

Plaintiffs, children of deceased settlor, *held*, not estopped nor chargeable with laches so far as demand for return of stock pledged by trustee as additional collateral for loan by bank to their mother where trustee had no authority so to pledge it and plaintiffs acted with due diligence upon discovery of the unauthorized pledge of the stock.

7. SAME—UNAUTHORIZED PLEDGE OF CORPUS—DIVIDENDS—ESTOPPEL.

Bank with whom dividend-paying stock, owned by a family trust, was pledged by trustee as additional collateral for loan to mother secured by mortgage on realty, not in the trust, *held*, not accountable after mother's death for dividends received by it and applied on mortgage debt during her lifetime where plaintiffs acquiesced in such application of dividends, since they are estopped as to such matter.

8. ESTOPPEL—SILENCE.

An estoppel arises when one by his silence, when he ought to speak out, intentionally or through culpable negligence, induces another to believe certain facts exist and such other rightfully relies and acts on such belief, so that he will be prejudiced if former is permitted to deny the existence of such facts.

9. MORTGAGES—FORECLOSURES BY ADVERTISEMENT—DEFICIENCY—ACTION AT LAW.

An action at law may be instituted for deficiency on statutory foreclosure of a mortgage securing a promissory note.

WIEST, C. J., and BUTZEL and NORTH, JJ., dissenting in part.

Appeal from Osceola; Neal (Max E.), J. Submitted October 20, 1937. (Docket No. 93, Calendar No. 39,733.) Decided May 4, 1938. Rehearing denied June 30, 1938.

Bill by Spencer F. Postal and others against Home State Bank for Savings and others to restrain foreclosure of a mortgage, for an injunction and other relief. Cross-bill by defendant receiver of American Home Security Bank against plaintiffs to establish foreclosure of a mortgage and to establish

title to certain stock. Decree for defendants. Plaintiffs appeal. Modified and affirmed.

*Gillard & Gillard,* for plaintiffs.

*John M. Dunham,* for defendant.

BUSHNELL, J. The testimony in this record is necessarily meager because the court stenographer died before the transcript of his stenographic notes was completed.

Plaintiffs filed a bill in chancery and secured an injunction restraining defendants from proceeding with a statutory mortgage foreclosure on certain lands in Osceola county and "from selling, * * * or in any way interfering with the rights and claims of the Postal heirs in and to 832 or more shares of common stock of American Logging Tool Company."

During his lifetime Frank S. Postal was the owner of certain property known as the Spring Hill Farm, consisting of 240 acres. Mr. Postal was a prominent citizen in his community and had various business interests. He was a stockholder in the Evart bank and its successor, Evart State Bank, and had a large interest in the American Logging Tool Company, whose earnings after Mr. Postal's death furnished much of the family's income. He had developed his farm so that it was generally known as a show place.

In 1910, Frank S. Postal executed a trust instrument in which he conveyed all of his personal property to his son, James R. Postal, "as trustee for Ellen Postal, my wife, an undivided one-third, and James R. Postal, and Gertrude E. Conover, Spencer F. Postal and Geneva A. Postal my children, each an undivided one-quarter of an undivided two-thirds interest."

Under the instrument the trustee was authorized "to sell, assign or dispose of the same as he shall deem for the best interest of my said wife and children," et cetera. This instrument was recorded in Osceola county on May 3, 1924. Mr. Postal died intestate in 1913 and his son, James R. Postal, the trustee, died, also intestate, in 1933. Mrs. Frank S. Postal (Ellen Postal) died intestate in 1930. Plaintiff Margaret Postal is the widow and sole heir-at-law of James R. Postal.

The estates of Frank S. Postal, Mrs. Ellen Postal and James R. Postal were never probated. Counsel suggests this was probably because the so-called declaration of trust was regarded as a sufficient protection to the interests of the heirs. In 1925, however, a petition was filed and an order entered in the probate court determining the heirs of Frank S. Postal. On February 2, 1922, James R. Postal secured a loan of $7,500 from the Peoples State Bank of Detroit in the name of Frank S. Postal Estate, depositing as collateral security therefor 417 shares of stock of the American Logging Tool Company, represented by certificate No. 1, issued to Frank S. Postal August 1, 1912. This stock was reissued in certificates 83 to 86 in the name of James R. Postal, trustee, on January 29, 1923, all of the Postal heirs having indorsed certificate No. 1.

On July 2, 1925, the trustee secured a new loan of $12,500 from the Home State Bank for Savings of Grand Rapids. The Peoples State Bank of Detroit sent the four certificates for 417 shares of stock to the Grand Rapids bank with sight draft attached, which was paid by it, and thereafter the Grand Rapids bank held these shares and, in addition, a certificate for 415 shares of the same stock, then standing in the name of James R. Postal individu-

ally. The four certificates, totaling 417 shares, were indorsed in blank by James R. Postal, trustee, but the one certificate for 415 shares did not bear any indorsement.

August 26, 1925, Mrs. Ellen Postal executed a real estate mortgage upon the Spring Hill Farm for $20,000 and signed a promissory note in this amount which bore on its face the words, "This note is secured by a real estate mortgage bearing even date herewith." The $12,500 loan was satisfied from the proceeds of the real estate loan and, after making mortgage expense deductions, the balance of $7,195.35 was deposited in the savings account of Ellen Postal and a pass book was issued to her. The trial court observed that:

"It appears that a large part, if not all, of the net proceeds of these loans were used by Ellen Postal and James R. Postal, trustee, to pay and discharge their, as well as the plaintiffs' liabilities for the assessments levied upon their bank stocks."

The bank continued to hold the 832 shares of the American Logging Tool Company stock and, at the direction of James R. Postal, the dividends upon this stock were paid to the bank and applied by it upon the interest and principal of the mortgage.

On November 28, 1932, foreclosure was begun by advertisement and, there being no other bidders, the farm was struck off to the bank for the sum of $15,600. This amount was credited upon the mortgage, leaving unpaid and due thereon the sum of $4,378.92. The period of redemption expired February 28, 1934.

The bill in chancery herein was filed November 25, 1933, and, under it, plaintiffs sought moratorium relief by virtue of Act No. 98, Pub. Acts 1933, and asked that the mortgage sale be set aside for reasons

hereinafter discussed. They also claimed that the bank should surrender the 832 shares of stock which they said were illegally pledged by James R. Postal, and that the bank should account for the dividends received by it on this stock. In the meantime, the Home State Bank for Savings had merged with two other Grand Rapids banks under the name of the American Home Security Bank of Grand Rapids, which is now represented in this action by its receiver.

The mortgage sale is attacked on three grounds which we shall now discuss.

Plaintiffs' first claim is that the premises should have been sold in separate parcels and not as a unit. 3 Comp. Laws 1929, § 14431 (Stat. Ann. § 27.1227), requires that when the mortgaged premises consist of "distinct farms, tracts, or lots not occupied as one parcel, they shall be sold separately, and no more farms, tracts, or lots shall be sold than shall be necessary to satisfy the amount due on such mortgage at the date of the notice of sale."

This section, however, also provides that "if distinct lots be occupied as one parcel, they may in such case be sold together." The 240 acres in question consist of the northwest one-quarter of section 28 and the east one-half of the west one-half of the southwest one-quarter of section 21, and the southeast one-quarter of the southwest one-quarter of section 21, township 18 north, range 8 west.

The testimony is clear that for many years these premises, the lands of which are contiguous except as crossed by highways and streams, have been occupied as an entirety by the Postal family. We agree with the trial judge that the evidence fails to show that such general use and occupancy had ceased either at the time of the giving of the mortgage in

1925 or at its foreclosure in 1933. See *Harris* v. *Creveling,* 80 Mich. 249, and *New England Mutual Life Ins. Co.* v. *Lindenbaum,* 276 Mich. 111.

The appellants complain of the fact that the property was sold for less than the mortgage debt. Mortgage sales may not be set aside for mere inadequacy of price; there must be either actual or constructive fraud. *Cameron* v. *Adams,* 31 Mich. 426; *Moss* v. *Keary,* 231 Mich. 295; and *Detroit Trust Co.* v. *Agozzinio,* 280 Mich. 402. There is no testimony that the bidding was stifled or that the mortgagee's bid price was a fraud upon the mortgagor. While the original investment in the property was large, according to the testimony it had substantially deteriorated in value, the soil was light, and the buildings had been unoccupied for several years. The farm had an assessed valuation of $17,700 in 1925 and $9,800 in 1933. Defendant's bid was fair and adequate.

It is claimed that the foreclosure should have been transferred to equity and the sale held by the court under such terms and provisions as it should deem proper. Section 3 of Act No. 98, Pub. Acts 1933, under which plaintiffs make this claim, applies to mortgages "being foreclosed" at and after the time when the act became effective. The mortgage had already been foreclosed by the sale held on February 28, 1933, before the effective date of the act, June 2, 1933. Plaintiffs' rights under the act were confined to an extension of the period of redemption. *Young* v. *Union Joint Stock Land Bank of Detroit,* 266 Mich. 83, and *Steiner* v. *Monroe State Savings Bank,* 274 Mich. 303.

The remainder of plaintiff's claim relates to the 832 shares of stock. The bank, of course, contends that this stock was pledged to it by James R. Postal

as additional security for the mortgage debt. But plaintiffs say that if the stock was held by the bank, it was only because Postal had failed to secure its return after the execution of the mortgage.

There was never an express assignment of the stock by either Postal or the plaintiffs to the bank. There was nothing in the mortgage or note referring to the stock and no collateral note or collateral assignment was ever executed in which the stock was mentioned. In support of the claim that the bank held the stock as collateral security, defendants offered in evidence a letter from Postal dated August 27, 1925, in which he said:

"The Home State Bank for Savings is to hold this stock as additional security to the mortgage of $20,000. * * * You, no doubt will want a collateral agreement covering the Logging Tool stock. If you will send me the form you wish I will sign and return at once."

To this the bank replied on August 31st, saying:

"The stock certificates are properly signed and will not require an additional assignment of this collateral."

In 1932, Postal wrote the officers of the Logging Company to the effect that he might have to sell this stock and inquiring whether they knew of anyone who would buy it and at what price. A year later, he again wrote advising the American Logging Tool Company that the stock was held by the bank only for the purpose of amortizing the mortgage and that it was owned entirely by the members of the Postal estate and should not be transferred without their authorization.

Defendants claim that Postal's first letter evidences the real contract, while plaintiffs urge a dif-

ferent interpretation of the transaction in the light of the subsequent correspondence.

It is unnecessary to pass upon these conflicting claims because, had an attempt been made by trustee Postal to pledge the stock, it would have been of no effect since no such express power was granted to him under the terms of the trust instrument. The power given the trustee to "sell, assign or dispose" did not carry with it the power to pledge. See *Jeffrey* v. *Hursh,* 49 Mich. 31 (agent); *Parkhurst* v. *Trumbull,* 130 Mich. 408 (executor); *Long* v. *City of Monroe,* 265 Mich. 425 (attorney-agent); 1 Restatement of the Law of Trusts, § 191.

There is no testimony to show that plaintiffs are estopped or are chargeable with laches so far as their demand for the return of the unauthorized pledge is concerned. Spencer F. Postal, brother of James, said that he did not learn that the stock was in the hands of the bank until about Christmas time in 1930, and then only by reason of a conversation with Mr. Martin Verdier, then vice-president of the bank. He testified that he said to Mr. Verdier—"This American Logging Tool Company stock is not up for collateral for this loan when you have all that farm," and that Mr. Verdier replied—"No, sir. We are just collecting the dividends as an off-set on the mortgage."

Neither has it been shown that any one of the plaintiffs knew of the bank's claim to the stock until its receiver attempted to secure a transfer of the stock. When this information came to them, plaintiffs acted with due diligence in bringing the present suit.

Plaintiffs' exhibit 5 shows that a large number of dividends were paid on the American Logging Tool Company stock to the Home State Bank of Sav-

ings, beginning with September 21, 1925, and continuing until June 20, 1931. With some few exceptions, these dividends were paid monthly, generally in the sum of $166.40, and in 14 instances, in the sum of $332.80. One dividend was for $259.05, and those in 1931 were for only $83.20. It is a tax upon the credulity of this court to urge us to believe that the beneficial owners of the stock were wholly unaware of the payment of the dividends and their application by the bank to the credit of their mother, Ellen Postal, on her own mortgage. In the recent case of *Schudlich* v. *Yankee,* 272 Mich. 482, we quoted *Kole* v. *Lampen,* 191 Mich. 156, saying:

" 'It is a familiar rule of law that an estoppel arises when one by his acts, representations, or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts. 16 Cyc. pp. 722, 723. See, also, Bigelow on Estoppel (5th Ed.), p. 570; *Dann* v. *Cudney,* 13 Mich. 239 (87 Am. Dec. 755); 11 Am. & Eng. Enc. Law (2d Ed.), pp. 427, 428; 16 Cyc. pp. 759, 769.' "

Plaintiffs acquiesced in the application of the dividends and are estopped from requiring the bank to account for them.

The amount of the deficiency on the mortgage sale has become fixed and suit may be brought on this deficiency if desired. *New York Life Ins. Co.* v. *Erb,* 276 Mich. 610.

The decree of the trial court should be modified so as to eliminate therefrom that portion which permits the sale of the 832 shares of stock for the purpose of satisfying the deficiency and, in lieu thereof,

the decree will provide for the return of the stock to plaintiffs. In other respects the decree is affirmed. A decree in accordance with this opinion may be entered here. Costs to appellants.

SHARPE, POTTER, and CHANDLER, JJ., concurred with BUSHNELL, J.

BUTZEL, J. (*dissenting in part*). I concur in Mr. Justice BUSHNELL's opinion as to the regularity of the real estate mortgage foreclosure. I also concur in the findings that plaintiffs are estopped to claim the dividends on the American Logging Tool Company stock which have been paid to the bank. However, I believe that some of the plaintiffs are not entitled to a return of their share of the stock held by defendants.

It is true that the trust instrument limited the trustee's power to sell, assign, or dispose of the *corpus* and conferred no right to pledge. The evidence shows that James R. Postal, the trustee, did pledge the stock, notwithstanding the testimony of Spencer F. Postal that he was told by a bank officer, many years after the pledge was made, that the stock was left with the bank only for the purpose of applying the dividends on the mortgage. The trial judge evidently paid little attention to this testimony of an alleged admission. He properly held that the written documents introduced in evidence conclusively show that the stock was pledged. We have italicized the significant words in these documents.

While the mortgage negotiations were pending, James R. Postal wrote to the bank on July 15, 1925, stating that he was inclosing abstracts, application for the loan, a tax history and insurance policies, and also that:

"At the time I return the mortgage to you I will also send a *signed collateral agreement* covering the 832 shares of American Logging Tool stock, together with copies of my letters to The American Logging Tool Company advising them to mail all future dividend checks to your bank for the credit of Ellen Postal."

The mortgage note was dated August 26, 1925, and on August 27th, James R. Postal wrote to Mr. Verdier, vice-president and cashier of the Home State Bank for Savings, as follows:

"From the proceeds of this loan will you kindly pay the two notes in the amounts of $7,500 and $5,000 and secured by 832 shares of American Logging Tool Company common stock. The Home State Bank for Savings is to hold this stock as *additional security to the mortgage of $20,000.* The balance of the mortgage loan after your expenses have been deducted is to place to the credit in your savings department, of Ellen Postal.

"I have instructed the American Logging Tool Company, as per copies of my letter to them, to pay all dividends on their stock held by you *as collateral* direct to the Home State Bank for Savings for the credit of Ellen Postal and am inclosing a letter from Ellen Postal to you authorizing you to charge her account with the interest at each interest period.

"You, no doubt will want a *collateral agreement covering the Logging Tool stock.* If you will send me the form you wish, I will sign and return at once."

Four days later, the vice-president and cashier answered Mr. Postal saying:

"The stock certificates are properly signed and will not require an additional assignment of *this collateral.*"

On August 26, 1925, a letter, signed "Jas. R. Postal, Trustee," and "Jas. R. Postal," was mailed to the American Logging Tool Company directing it to send all dividends on the stock standing in the name of James R. Postal, Trustee, and James R. Postal, to the Home State Bank for Savings for the credit of Ellen Postal. On the same date Ellen Postal wrote the letter referred to in the letter of James R. Postal, dated August 27th, directing the bank to charge her savings account with interest on the mortgage signed on that date. She also stated:

"It is understood that my savings account is to be made up of dividends from 832 shares of American Logging Tool stock which you are holding as *additional security* to this mortgage."

From September 21, 1925, up to and including December 20, 1930, dividends were paid each and every month to the bank, and thereafter every second month to June 20, 1931. These dividends were credited by the bank on cards which bore the legend:

"Dividends paid Home State Bank for Savings, for credit of Ellen Postal on Jas. R. Postal Trustee and James R. Postal stock by American Logging Tool Company."

They show the original entries, beginning subsequent to the date of the mortgage, as made by the bank from time to time.

Four hundred seventeen shares of stock stood in the name of James R. Postal, Trustee, and 415 in that of James R. Postal. The certificate of the latter bore no indorsement on its reverse side, though the correspondence shows beyond any question that the entire 832 shares were left with the bank as collateral. Appellee in a supplemental brief produced a photostatic copy of an assignment in blank of the

415 shares in a separate instrument dated May 29, 1925, signed by James R. Postal with signature guaranteed by the Guaranty Trust Company of New York. Presumably it was sent to the Home State Bank for Savings, though this assignment was not introduced in evidence. The judge found that all of the stock had been deposited as collateral. No claim founded on lack of signature is contained in the statement of questions involved in appellant's original brief. The lack of such signature prompted the inquiry by the court. The printed record as presented is sufficient to show conclusively that the entire 832 shares were left with the bank as additional collateral and, under the circumstances, indorsement was not necessary to constitute a binding pledge. 2 Comp. Laws 1929, § 9528 (Stat. Ann. § 19.339); *Graham* v. *Wilson,* 272 Mich. 574.

James R. Postal, now deceased, besides being trustee of the entire *corpus,* held a one-sixth beneficial interest in the American Logging Tool Company stock as *cestui que trust.* There was no restriction in the trust instrument prohibiting any *cestui* from doing what he or she is pleased with his or her beneficial interest. James R. Postal and Ellen Postal had a right to transfer their interest as they saw fit. See *Henderson* v. *Sherman,* 47 Mich. 267; *Young* v. *Gnichtel,* 28 Fed. (2d) 789; *First National Bank of Spartansburg* v. *Dougan,* 250 Fed. 510. Also, see *Palmer* v. *Williams,* 24 Mich. 328, and *Williams* v. *Spurr,* 24 Mich. 335, wherein we held that a conveyance in breach of trust by a trustee who was also a *cestui* under the trust, transferred his beneficial interest, even though it did not affect the interests of the other *cestuis.* Consequently, there was a valid pledge of the one-sixth undivided interest in the stock owned by James R. Postal and plain-

tiff Margaret Postal, claiming as his heir, took that one-sixth undivided interest subject to the pledge to the bank.

The letter of Ellen Postal dated August 26, 1925, conclusively shows that she was aware of the pledge of the stock and acquiesced therein. We said in *Quimby* v. *Uhl,* 130 Mich. 198, 212, that:

"Where beneficiaries either expressly or impliedly assent to the action of their trustee in managing their property not in strict accord with the terms of the trust, they will be held to have acquiesced in such action. * * * A party cannot complain when he has consented."

See, also, *In re Sheiler's Estate,* 172 Mich. 600; *In re Hoffman's Estate,* 183 Mich. 67; and *Lawrence* v. *First Nat'l Bank & Trust Company of Kalamazoo,* 266 Mich. 199. Since Ellen Postal acquiesced in the pledge, she was estopped to deny that the trustee had authority to pledge, and all four plaintiffs, as her heirs, are likewise estopped to contend that there was no pledge of her undivided one-third interest.

The bank is entitled to hold as security only the one-third undivided interest of Ellen Postal and the one-sixth undivided interest of James R. Postal in the American Logging Tool Company stock. The decree should be modified accordingly, with costs to prevailing appellants.

Wiest, C. J., and North, J., concurred with Butzel, J. Fead, J., took no part in this decision.